IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

ELECTRONICALLY FILED
Jun 16 2022
U.S. DISTRICT COURT
Northern District of WV

**Francis Kaess**

*Plaintiff,*

VS.                                                 CIVIL ACTION NO. 1:22-CV-51

HON. THOMAS KLEEH

**COMPLAINT**

**Jay-Bee Oil & Gas, Inc.**
**Jay-Bee Production Company**
**BB Land, LLC**

*Defendants.*

## INTRODUCTORY STATEMENT

1. Property ownership and property rights generally are a vitally important part of the American tradition since before its inception as an independent nation; dating back to John Locke's treatises of government in which he refers to life, liberty, and property as being fundamental rights in the nature of law; which are widely believed to be the template for language in the Declaration of Independence and U.S. Constitution.

2. Protection of an individual's property is mentioned twice in the U.S. Constitution, once in the Bill of Rights via the Fifth Amendment "No person shall […] be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." And then again in the Fourteenth Amendment, where is states "…nor shall any State deprive any person of life, liberty, or property, without due process of law;"

3. The importance of real property ownership in particular is expressed colloquially in our culture on a frequent basis. The following quotes illustrate that point:

    - "The wise young man or wage earner of today invests his money in real estate."

        -Attributed to **Andrew Carnegie**

    - "Buy land, they're not making it anymore." Attributed to **Mark Twain**

    - **"**The best investment on earth is earth." Attributed to **Louis Glickman**

4. Individual property rights, in this matter, are highlighted with respect to oil and gas in particular.

5. Energy generation has historically been essential to regional and national economic growth in the United States; and oil and gas plays an important role in that.

6. However, most individuals do not have the means to extract natural resources, including oil and gas, from the ground on their own. Therefore, property owners must rely on companies who have the knowledge, experience, money, and general wherewithal to extract those resources and place them into the stream of commerce.

7. Any time companies need to enter onto and/or into lands held by other individuals, it is vitally important for those companies to garner trust with Oil and Gas owners; and to foster that trust by doing what they said they will do and honor their commitments to said Oil and Gas owners.

8. In this instance Defendant Exploration and Production Company broke that trust, and this filing is design to hold Defendant accountable for breaking that trust.

## PARTIES

9. Plaintiff, Francis Kaess (hereinafter "Kaess"), is an individual Mineral Owner of interests in Pleasants Count, West Virginia, and residing at 561 Chaffeeville Road, Storrs Mansfield Connecticut, 06268.

10. Defendant Jay-Bee Oil & Gas Inc. is a West Virginia Corporation with a local office address at 3570 Shields Hill Road, Cairo, WV 26337 and a Principal office address at 16 South Avenue W., Suite 118, Cranford, NJ 07016.

11. Defendant Jay-Bee Production Company is a West Virginia Corporation with a local office address at 3570 Shields Hill Road, Cairo, WV 26337 and a Principal office address at 16 South Avenue W., Suite 118, Cranford, NJ 07016.

12. Defendant BB Land, LLC is a West Virginia Limited Liability Company with a local office address at 3570 Shields Hill Road, Cairo, WV 26337 and a Principal office address at 16 South Avenue W., Suite 118, Cranford, NJ 07016.

## JURISDICTION AND VENUE

13. This Honorable Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C §1332 because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of the States of West Virginia, New Jersey, and Connecticut.

14. Venue is proper in the Clarksburg Division of the Northern District of West Virginia under 28 U.S.C. §1391 (b)(2) because a substantial part of property that is the subject of the action is situated in Pleasants County West Virginia, which is within the boundaries of the

Clarksburg Division of the Northern District of West Virginia.

15. This Honorable Court has authority to enter the remedies and declaratory relief sought in this matter pursuant to Federal Rules of Civil Procedure 38 and 39 and 28 U.S.C. §2201 and 2202.

16. This Honorable Court has personal jurisdiction over the Defendants because West Virginia is the location of their denial of Plaintiffs' rights under the laws of the State of West Virginia.

## FACTUAL ALLEGATIONS

17. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

18. Plaintiff is the owner of Oil & Gas interests underlying multiple tracts of land in Union District, Pleasants County, West Virginia, known as Map 7, Parcels 29 & 30; and Map 12 Parcels 5 & 39, containing approximately 103.5 acres, more or less; as well as five-sixths (5/6) interest in Map 12 Parcel 4 containing 1.5 acres, more or less (hereinafter referred to collectively as "Subject Land").

19. Through his purchase of Subject Land, Plaintiff became the Lessor, and through a series of Assignments of interest, and acquisition in Bankruptcy, Defendant BB Land, LLC became Lessee, of a leasehold estate regarding Subject Land covering the right to drill and explore for and extract Oil and Gas from the Marcellus Shale formation entered into by predecessors in title by document dated January 6, 1979. **[See Exhibit E1]**

20. On or about May 19, 2016, Plaintiff and Defendant BB Land, LLC, signed a document entitled Pooling Modification Agreement, to modify the aforementioned document dated January 6, 1979. **[Exhibit E2]**

21. On or about February 15, 2016, Plaintiff and Defendant BB Land, LLC entered into a

document entitled "Paid-Up Oil & Gas Lease" (and accompanying Memorandum of Oil and Gas Lease) covering, inter alia, all formations from the bottom of the Oriskany Sands to 200 feet below the bottom of the Trenton Formation underlying Subject Lands for Oil and Gas exploration and drilling and extraction of Oil and Gas. **[See Exhibits E2 and E3]**

22. On or about September 8, 2017, Plaintiff and Defendant BB Land, LLC entered into an agreement entitled "Ratification of Memorandum of Lease and Oil and Gas Lease" to correct a previous Exhibit by removing Union District Map 12, Parcel 4 (covering 1.5 acres) erroneously included in previous documents covering all formations from the bottom of the Oriskany Sands to 200 feet below the bottom of the Trenton Formation. **[See Exhibit E4]**

23. On or about June 21, 2018, Defendants recorded a document in the Office of the Clerk of the County Commission of Pleasants County, West Virginia a document entitled "Designation of Unit Pleasants P2 South "A" Marcellus Unit." **[Exhibit A3]**

24. On or about June 21, 2018, Defendants recorded a document in the Office of the Clerk of the County Commission of Pleasants County, West Virginia a document entitled "Designation of Unit Pleasants P2 South Utica Unit." **[Exhibit B3]**

25. On or about June 21, 2018, Defendants recorded a document in the Office of the Clerk of the County Commission of Pleasants County, West Virginia a document entitled Designation of Unit Pleasants P3 South Utica unit." **[Exhibit C2]**

26. At an indeterminate time between the signing of the documents in items above (leases, modification, and or ratifications) and the filing of the documents beginning in title "Designation of Unit…", Plaintiff was furnished with a document entitled, in part, "Division Order" regarding the above referenced units; Plaintiff did not sign said document.

27. On or about March 2018, Defendants began to report production of Oil and/or Gas from the above described "Units" named P2 South Marcellus and Utica and P3 South Utica.

28. Based upon information and belief, Defendants have placed payments issued to pay to the order of Plaintiff in "suspense" unless and until Plaintiff signs the aforementioned "Division Order" document. **[Exhibit D]**

29. Based upon information and belief, Defendants have made deductions from payments placed in "suspense" for Plaintiff in appropriately from production out of the Marcellus Shale formation. **[Exhibit E]**

## CLAIMS FOR RELIEF

## COUNT I – PAYMENT MISALLOCATION

30. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

31. Plaintiff in the case at bar currently owns Oil and Gas interest in and underlying what is labeled as Unit P2S **[as illustrated in Exhibit A1].**

32. Currently, Defendants are extracting Oil and/or Gas from formations from part of a pool that is underlying Plaintiff's tracts; however, Defendants are not paying Plaintiff in accordance with his "Correlative Rights" and "Just and equitable share of production," but rather in accordance with the percentage Plaintiff's tracts cover in that of Unit Boundary Lines determined by Defendants.

33. W. Va. Code §22C-9-2(a)(9), defines "Pool" as follows:

    - "Pool' means an underground accumulation of petroleum or gas in a single and separate reservoir (ordinarily a porous sandstone or limestone). It is characterized by a single natural-pressure system so that production of petroleum or gas from one part of the pool affects the reservoir pressure throughout its extent. A pool is bounded by geologic barriers in all directions, such as geologic structural conditions, impermeable strata, and water in the formations, so that it is effectively separated from any other pools that may be presented in the same district or on the same geologic structure;

34. W.Va. Code §22C-9-2(a)(13)'s definition of "Drilling unit" is "the acreage on which one well

may be drilled.

35. Furthermore, W. Va. Code §22C-9-2(a) (15) and (16) defines "Correlative rights" and "Just and equitable share of production" respectively, as follows:
    - (15) "Correlative rights" means the reasonable opportunity of each person entitled thereto to recover and receive without waste the oil and gas in and under his tract or tracts, or the equivalent thereof; and
    - (16) "Just and equitable share of production" means, as to each person, an amount of oil or gas or both substantially equal to the amount of recoverable oil and gas in that part of a pool underlying the person's tract or tracts.

36. The relevant contractual language is contained in a document entitled "Pooling Modification Agreement"—designated as **Exhibit E2**—under item 1 entitled "POOLING AND UNITIZATION", which states as follows:

    - Lessee, at its option, is hereby given the right to pool or combine the acreage covered by this Lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, when in the Lessee's judgment it is necessary to advisable to do so in order to properly develop and operate said premises in compliance with any lawful spacing rules which may be prescribed for the field in which this lease is situated by an duly authorized authority, or when to do so would, in the judgment of the Lessee, promote the conservation of the oil and gas in and under and that may be produced from said premises Lessee shall execute in writing an instrument identifying and describing the pooled acreage. The entire acreage so pooled into a tract or unit shall be treated, for all purposes ***except the payment of royalties on production from the pooled unit***, as if it were included in this lease. If production is found on the pooled acreage, it shall be treated as if production is had from this lease, whether the well or wells be located on the premises covered by this lease or not. In lieu of royalties elsewhere herein specified, ***Lessor shall receive on production from a unit so pooled only such portion of the royalty stipulated herein as the amount of his/her acreage placed in the unit or his/her royalty interest therein on an acreage basis bears to the total acreage so pooled in the particular unit involved***. [emphasis added]

37. The contractual language itself is problematic; the words "pool" and its derivatives, plus the word "unit" and its derivatives are not separately defined herein, which causes great ambiguity and therefore the doctrine of *contra proferentem* applies.

38. The West Virginia Supreme Court of Appeals defines the doctrine of *contra proferentem* as follows: "The doctrine of *contra proferentem* provides that ambiguous contractual provisions must be construed against the interests of the drafter" [*Evans v. Bayles,* 787 S.E.2d 540, 237

W.Va. 269 (W.Va. 2016) endnote 1, quoting *Amerix Corp. v. Jones*, 457 Fed.Appx. 287, 292 n. 3 (4th Cir. 2011)]

39. Because "pool" and "unit' are not defined in the contract, the statutory definition in Article 9 of Chapter 22C entitled "Oil and Gas Conservation" must be relied upon. (those definitions are supplied above).

40. Applying the definitions of "pool" and "unit" from the relevant statute, one's attention must turn to Exhibit A2, that illustrates the boundaries of the P2S6 Well—drilled within the P2S Unit—which contains at least part of the tracts owned by Plaintiff, and therefore the Oil and Gas lying below those tracts is to be produced.

41. As such, under the doctrine of *contra proferentem,* Plaintiff should be paid—according to both State law and contractual language (under the doctrine of *contra proferentem)* outlined above—based upon production from the boundaries of the P2S6 Well itself because payments based on those boundaries (as illustrated in Exhibit A1)[1] would satisfy the statutory language used in W. Va. Code §22C-9-2(a) (15) and (16) as they define "Correlative rights" and "Just and equitable share of production" respectively, as well as the contractual language, which would reflect the acreage amount, within the unit created by the P2S6 well.

42. The same reasoning and rationale above applies to payments to Plaintiff with respect to Defendant's P2SU unit and accompanying P2S6U well. **[see Exhibits B1 – B3]**.

43. Plaintiff further concedes that, applying the reasoning and rationale above consistently means that Plaintiff would not be due and owing any monies produced from the P3SU Well within Defendant's P2SU Unit. **[See Exhibits C1 – C3]**

---

[1] References to, and usage of the word "Unit" with respect to Exhibits is to remain consistent with the usage of that word by Defendant in its filings, which contain its own headings, labeling, etc. and is not to be construed as Plaintiff accepting Defendant's definitions of "Unit."

## COUNT II – IMPROPER DEDUCTIONS - MARCELLUS

44. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

45. A document dated January 6, 1978, was signed by predecessors in interest to Plaintiff (said document is included herein as **Exhibit E1** and hereafter referred to as "Base Lease").

46. Page 2 of the Base Lease states as follows:

    - "In consideration of the premises the said Lessee covenants and agrees as follows:
        - 1. To deliver to the credit of Lessors free of cost in pipe lines to which he may connect his wells, the equal one-eighth (1/8) part of all oil produced and sold from the leased premises.
        - 2. To deliver to the credit of Lessors free of cost in the pipeline to which he may connect his wells, the equal one-eighth (1/8) part of all gas produced and marketed from the leased premises. [truncated]"

47. The language contained in Base Lease is unambiguous in its "free of cost" language, and therefore, Defendant should not be making any deductions whatsoever from Royalty payments to Plaintiff on production within the Marcellus Shale formation.

## COUNT III – EXCESSIVE DEDUCTIONS – UTICA

48. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

49. Plaintiff signed a document dated February 15, 2016 (hereinafter "February 15th Lease"), with Defendant BB Land, LLC as lessee, covering the oil and gas, from the bottom of the Oriskany Sands to 200 feet below the bottom of the Trenton Formation, which includes the Utica Shale formation.

50. In the February 15th Lease, item 3 states, *inter alia*, it states, "Lessee shall deliver to the credit of the lessor, in the pipeline to which he may connect his wells, the equal 17% part of all oil

and gas produced and saved from leased premises, payable monthly; excepting a gathering rate equal to the posted Dominion gathering rate, constant flow of product, and any fees associated with an increase of the ultimate price realized for the products sold, if applicable. **THERE SHALL BE NO OTHER DEDUCTIONS TAKEN OUT OF ROYALTIES**."

51. In a document with the heading "Suspense Detail Listing by Owner", provided by defendant, there are deductions labeled under the categories *Gas-Compression; Gas-Gathering; and Gas-Transportation.* **[Exhibit F]**

52. While the February 15th Lease does allow for a gathering rate, the "posted Dominion gathering rate" is to be the frame of reference for this charge, but is not provided to Plaintiff as it should be.

53. Further, the other categories for *Gas-Compression and Gas-Transportation* are not allowable under the terms of the lease; as neither of those is included in the language used in the lease to indicate what deductions are in fact acceptable under the terms of the agreement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court enter an order and judgment as follows:

A. Declaring that the manner in which Defendants are issuing payments to Plaintiff based on production from Wells P2S6 (API #4707302566); P2S6U (API #4707302561); and P3S2U (API #4707302563) is improper as a matter of law and contract.

B. Declaring that the manner in which Plaintiffs have proposed payments should be calculated with respect to Wells P2S6 (API #4707302566); P2S6U (API #4707302561); and P3S2U (API #4707302563) is proper and should be altered accordingly immediately and permanently.

C. Declaring that the deductions Defendants have made from payments issued to Plaintiff with respect to Marcellus Shale formation production are improper as a matter of law and contract;

D. Declaring that the deductions Defendants have made from payments issued to Plaintiff with respect to the Utica Shale formation production are improper with respect to the amounts contained in the categories *Gas-Compression* and *Gas-Transportation*; and further that deductions made under the category of *Gas-Gathering* requires further information in order to ascertain whether the dollar amounts are proper according to the February 15th Lease terms.

E. Award damages in an amount to be determined at trial for Defendants' improper allocation of payments to Plaintiff; in addition to any and all amounts held in suspense due and owing to Plaintiff.

F. Award damages in an amount to be determined at trial for improper deductions taken from payments originating from Marcellus and Utica Shale formations production; in addition to any and all amounts held in suspense due and owing to Plaintiff.

G. Award treble damages with respect to the amounts stated in items D and E as well as Plaintiffs costs, expenses, reasonable attorneys' fees and any and all further relief this Honorable Court deems just and proper.

**Jury Trial Is Demanded**

Respectfully Submitted,

Francis Kaess

By:

*/s/ J. Anthony Edmond Jr.*
J. Anthony Edmond Jr. Esq. (WVSB #14162)
Michael B. Baum, Esq. (WVSB #12310)
EDMOND & BAUM, PLLC
1300 Market Street, Suite 102
Wheeling, WV 26003
P: 304.810.3201
F: 304.212.0473
attorneys@edmondbaumpllc.com
*Counsel for the Plaintiffs*

## VERTIFICATION

STATE OF Connecticut,    SS: Mansfield
COUNTY OF Tolland, to-wit

Before me, the undersigned authority and notary public, personally appeared **Francis Kaess** who being duly sworn according to law deposes and states that he is the Plaintiff in this matter and that the averments and facts contained in the foregoing are true, accurate, and correct to the best of his knowledge, information, and belief.

_Francis Kaess_
Francis Kaess
*Plaintiff*

Taken, subscribed and sworn to before me this 8th day of June, 20 22.

_Stephanie Huber_
Notary Public

My Commission Expires:

Stephanie A Huber
Notary Public-Connecticut
My Commission Expires
August 31, 2023

## VERTIFICATION

STATE OF Connecticut,    SS: Mansfield
COUNTY OF Tolland, to-wit

Before me, the undersigned authority and notary public, personally appeared **Francis Kaess** who being duly sworn according to law deposes and states that he is the Plaintiff in this matter and that the averments and facts contained in the foregoing are true, accurate, and correct to the best of his knowledge, information, and belief.

*Francis Kaess*
Francis Kaess
*Plaintiff*

Taken, subscribed and sworn to before me this 8th day of June, 20 22.

*Stephanie Huber*
Notary Public

My Commission Expires:

Stephanie A Huber
Notary Public-Connecticut
My Commission Expires
August 31, 2023

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION**

**Francis Kaess**

    *Plaintiff,*

  VS.                                                                      CIVIL ACTION NO. 1:22-CV-51
                                                       HON. THOMAS KLEEH
                                                       COMPLAINT

**Jay-Bee Oil & Gas, Inc.
Jay-Bee Production Company
BB Land, LLC**

    *Defendant.*

**CERTIFICATE OF SERVICE**

    I, J. Anthony Edmond Jr., do hereby certify that on this 16th day of June, 20 22, I electronically filed a true and exact copy of the forgoing Complaint with the Clerk of Court and all parties using the CM/ECF System.

                                                                        */s/ J. Anthony Edmond Jr.*
                                                                         J. Anthony Edmond, Jr., Esq.