IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FRANCIS KAESS,**

    **Plaintiff,**

    v.                                      CIVIL NO. 1:22-CV-51
                                                        (KLEEH)

**JAY-BEE OIL & GAS, INC.,
JAY-BEE PRODUCTION COMPANY, and
BB LAND, LLC,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS [ECF NO. 12]**

Pending before the Court is Defendants' motion to dismiss. For the reasons discussed herein, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Francis Kaess ("Plaintiff") filed a Complaint on June 16, 2022, against Defendants Jay-Bee Oil & Gas, Inc., Jay-Bee Production Company, and BB Land, LLC ("BB Land") (together, "Defendants"). On August 12, 2022, Defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The motion is fully briefed and ripe for review. The Court held a hearing on the motion on December 7, 2022.

## II.  FACTS[1]

Plaintiff is the owner of certain oil and gas interests in Pleasants County, West Virginia (together, referred to as the "Subject Land"). See Compl., ECF No. 1, at ¶ 18. Plaintiff became Lessor, and BB Land became Lessee, of a leasehold estate regarding the Subject Land, covering the right to drill/explore/extract oil and gas, which was entered into by predecessors in title (the "Base Lease"). Id. ¶ 19 (Exhibit E1 to Compl.). On or about May 19, 2016, Plaintiff and BB Land modified the document by entering into a "Pooling Modification Agreement." Id. ¶ 20 (Exhibit E2 to Compl.).

On or about February 15, 2016, Plaintiff and BB Land entered into a "Paid-Up Oil & Gas Lease," which covered all formations from the bottom of the Oriskany Sands to 200 feet below the bottom of the Trenton Formation underlying the Subject Lands for oil and gas exploration/drilling/extraction. Id. ¶ 21 (Exhibits E2 and E3 to Compl.). This is referred to as the "February 15 Lease."

On or about June 21, 2018, Defendants recorded three documents: (1) "Designation of Unit Pleasants P2 South 'A' Marcellus Unit"; (2) "Designation of Unit Pleasants P2 South Utica

---

[1] These facts are taken from the Complaint. For purposes of analyzing Defendants' motion under Rule 12(b)(6), the Court assumes that the asserted facts are true.

Unit"; and (3) "Designation of Unit Pleasants P3 South Utica Unit." Id. ¶¶ 23-25 (Exhibits A3, B3, and C2 to Compl.). At some point after the signing of the leases, modifications, and ratifications above, but before the recording of the three documents beginning with "Designation of," Plaintiff was furnished with a document entitled "Division Order" regarding the three "Designation of" units. Id. ¶ 26. Plaintiff did not sign the document. Id.

On or about March 18, 2018, Defendants began to report production of oil and gas from P2 South Marcellus and Utica and P3 South Utica. Id. ¶ 27. Defendants have placed payments to Plaintiff in suspense unless and until Plaintiff signs the Division Order. Id. ¶ 28 (Exhibit D to Compl.). Defendants have also placed deductions from Marcellus Shale production payments to Plaintiff in suspense. Id. ¶ 29 (Exhibit E to Compl.).

Based on these facts, Plaintiff asserts the following causes of action:

- Count One: Payment Misallocation (against all Defendants);

- Count Two: Improper Deductions – Marcellus (unclear against whom – cites only "Defendant"); and

- Count Three: Excessive Deductions – Utica (unclear against whom – cites only "Defendant").

With respect to Count One, Plaintiff writes that it currently

owns oil and gas interests in and underlying what is labeled as "Unit P2S." Defendants are currently extracting oil and gas from part of a pool that is underlying Unit P2S, but they are not paying Plaintiff the proper amount. Looking at the Pooling Modification Agreement, "pool" and "unit" are not defined in the contract, so Plaintiff argues that certain statutory definitions should apply. Under the statutory definitions, Plaintiff argues that the payments are improper.

With respect to Count Two, Plaintiff writes that the Base Lease is unambiguous in its "free of cost" language, and "Defendant" should not be making any deductions from royalty payments to Plaintiff on production within the Marcellus Shale formation. With respect to Count Three, Plaintiff writes that the February 15 Lease provides for certain deductions, and "there shall be no other deductions taken out of royalties." Plaintiff argues that "Defendant" took out deductions that were not authorized.

### III.  STANDARDS OF REVIEW

#### Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows the Court to dismiss an action for lack of jurisdiction over the subject matter. A plaintiff bears "the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). In considering a motion to dismiss pursuant

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS [ECF NO. 12]**

to Rule 12(b)(1), the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. (citation omitted). The court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citation omitted). When a defendant asserts multiple defenses, "questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (citations and quotation marks omitted).

### Rule 12(b)(6)

Rule 12(b)(6) allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its

face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. MA.R.T.in, 980 F.2d 942, 952 (4th Cir. 1992). Dismissal is appropriate only if "it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim." Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969).

## IV.  DISCUSSION

In the motion to dismiss, Defendants argue that for all claims, Plaintiff's allegations stem from a breach of one or more contracts, but the only Defendant who is party to any contract with Plaintiff is BB Land, so all other Defendants should be dismissed. They further argue that at least part of the breach of contract claims in Count One and the entirety of Count Three are based on the February 15 Lease, which includes an arbitration clause. As such, Defendants argue that the Court does not have jurisdiction over those counts.

Defendants argue that the remainder of Count One should be

dismissed because the Court has previously ruled that similar pooling language is unambiguous and enforceable. Defendants argue that in Count Two, Plaintiff is party to an "in kind" oil and gas lease, as opposed to a "proceeds" lease. When Plaintiff failed to take his oil and gas in kind, BB Land was forced to market the production and thereby incur post-production expenses, which were properly deducted. Therefore, Plaintiff has failed to state a claim.

A.   **Count Three and Part of Count One: Arbitration**

The February 15 Lease, which forms the basis of Count Three and part of the basis of Count One, contains an arbitration provision:

> In the event of a disagreement between Lessor and Lessee concerning this lease, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined by arbitration in accordance with the rules of the American Arbitration Association. All fees and costs associated with the arbitration shall be borne equally by the Lessor and Lessee.

See Compl., Exh. E3, at ¶ 16. Defendants argue that Count Three and part of Count One should be dismissed under 12(b)(1) for lack of subject matter jurisdiction because they are subject to arbitration.

In the Fourth Circuit,

> a litigant can compel arbitration under the

> FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." <u>Whiteside v. Teltech Corp.</u>, 940 F.2d 99, 102 (4th Cir. 1991).

<u>Adkins v. Lab. Ready, Inc.</u>, 303 F.3d 496, 500-01 (4th Cir. 2002). Further, as Defendants point out, "[w]hile it may seem counterintuitive to split claims for resolution, . . . the Federal Arbitration Act, 9 U.S.C. § 2, requires that if a lawsuit presents multiple claims, some subject to an arbitration agreement and some not, the former claims must be sent to arbitration — even if this will lead to piecemeal litigation." <u>Cabot Oil & Gas Corp. v. Beaver Coal Co.</u>, No. 16-0904, No. 15-0905, 2017 WL 5192490, at *8 (W. Va. Nov. 9, 2017) (quotation marks and citations omitted).

In response, Plaintiff argues that the second prong of the <u>Adkins</u> test "does not contemplate" the type of dispute in this case. Plaintiff asserts that it is "in the best interest of both parties, and as a matter of public policy, that all Counts complained of in the case at-bar be adjudicated by a court of law rather than arbitration." Plaintiff asserts that this type of dispute may repeat itself without "binding precedent" and that courts are the best forum for adjudication moving forward.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS [ECF NO. 12]**

The Court finds that Count Three and part of Count One (the portion relating to the February 15 Lease) are subject to arbitration. However, the Court does not dismiss these claims for lack of subject matter jurisdiction under Rule 12(b)(1). See Schwartz v. Coleman, No. 87-2524, 833 F.2d 310, at *2 (4th Cir. Nov. 3, 1987) (unpublished) ("The [presence of an] arbitration agreement [merely] limits the scope of the court's review, not its subject matter jurisdiction."). Therefore, to the extent that Defendants have asked the Court to dismiss these claims, the motion is **DENIED**. The parties shall participate in arbitration in accordance with their February 15 Lease agreement. The Court **STAYS** resolution of Count Three and the portion of Count One relating to the February 15 Lease. The parties are **DIRECTED** to submit a filing with the Court when arbitration of these claims is complete.

B.  **Group Pleadings**

At the end of their motion, Defendants argue that Plaintiff's "group" pleadings are improper because they fail to give each defendant fair notice of the claims against them. They argue that Plaintiff concedes that he is only in privity with BB Land and yet seeks damages against all Defendants. In response, Plaintiff asserts that all three Defendants are acting in concert with one another to the extent that it is difficult to differentiate between them. The Court finds Defendants' argument persuasive. Plaintiff

cannot assert breach of contract claims against defendants who are not parties to the contracts at issue. Plaintiff failed to plead any alternative theories of liability against defendants not party to the contracts at issues. Merely applying labels such as "Payment Misallocation," "Improper Deductions" or "Excessive Deductions" does not magically transform the causes of action in the Complaint to something other than breach of contract claims subject to that area of governing law. Therefore, the motion to dismiss is **GRANTED** in this respect, and the Court **DISMISSES WITH PREJUDICE** all claims against Jay-Bee Oil & Gas, Inc. and Jay-Bee Production Company in the counts not subject to arbitration.

### C.  Remainder of Count One

The remainder of Count One asserts that Defendants breached the Base Lease. Defendants argue that the remainder of Count One should be dismissed because the Base Lease is unambiguously in their favor. They argue that the Stern v. Columbia Gas Transmission, LLC case is on point because the court found that a contract with the same pooling provisions was, in fact, enforceable. Plaintiff does not address these arguments in his response.

In Stern v. Columbia Gas Transmission, LLC, No. 5:15CV98, 2016 WL 7053702 (N.D.W. Va. Dec. 5, 2016) (Stamp, J.), the court granted a motion to dismiss breach of contract and related claims.

The plaintiffs had argued that the defendants breached an oil and gas lease by engaging in pooling, which, they argued, was not unambiguously provided for in the lease. The Court disagreed, finding as a matter of law that the lease language permitted pooling.

Here, Plaintiff is not making the same argument that was made in <u>Stern</u>. Instead, Plaintiff claims he is being paid the wrong amount. He is arguing that certain definitions in the lease are ambiguous and that the Court should apply statutory definitions. Plaintiff does not argue, as the plaintiffs did in <u>Stern</u>, that pooling itself is not allowed. As such, Defendants' motion to dismiss is **DENIED** with respect to the remainder of Count One.

**D.   Count Two**

Count Two alleges that "Defendant" should not be taking any deductions from royalty payments on the Marcellus Shale formation because of the unambiguous "free of cost" language in the lease. Defendants argue that Count Two fails to state a claim under 12(b)(6) because post-production deductions are, in fact, permissible.

First, Defendants point out that Plaintiff contracted to receive his share of production "in kind." Defendants argue that Plaintiff is confused and conflates the meaning of an "in kind" lease with that of a "proceeds" lease. In an in-kind lease, the

lessor contracts to receive his or her pro-rata share of actual production of oil and gas from the well — in other words, instead of receiving 12.5% of every dollar received by the lessee, the lessor contracts to receive 12.5% of every MCF of gas produced or every barrel of oil produced.

Second, Defendants argue that Estate of Tawney v. Columbia Natural Resources, LLC, 633 S.E.2d 22 (W. Va. 2006), upon which Plaintiff relies, applies only to proceeds leases, not in-kind leases. Third, Defendants argue that the duty to market does not apply to in-kind leases and a lessor's obligation under an in-kind lease ends at the point where the royalty owner is to take physical possession of and title to the oil or gas. While unanswered in West Virginia, Oklahoma law is clear that there is no duty to market under an in-kind royalty provision.[2] Therefore it follows that BB Land is permitted to deduct post-production costs from royalty payments to lessors who have an in-kind royalty provision.

Fourth, Defendants argue that under the in-kind leases, BB Land became Plaintiff's agent and was obligated to sell the oil or gas on behalf of Plaintiff and was entitled to take deductions from royalty payments to Plaintiff. Defendants argue that when

---

[2] Defendants favorably discuss Oklahoma law because the Supreme Court of Appeals of West Virginia found Oklahoma law persuasive in Wellman v. Energy Resources, Inc., 557 S.E.2d 254 (W. Va. 2001).

the lessor in an in-kind lease fails to take his production in kind, the lessee may sell said production and the lessor will bear his pro rata share of post-production expenses. BB Land maintained possession of the oil and gas, once produced, despite Plaintiff's being required to take possession of it. This impliedly authorized BB Land to sell it to avoid waste and loss. Because BB Land was obligated to go beyond what it was obligated to do under the lease, it was permitted to deduct post-production costs from Plaintiff's royalty payment.

Plaintiff does not address any of these arguments in his Response. During the motion hearing, Plaintiff referenced a recent opinion by United States District Judge John Preston Bailey, in which Judge Bailey found that <u>Wellman</u> and <u>Tawney</u> apply regardless of whether the lease at issue is an in-kind or proceeds lease. <u>See</u> Order Denying Defendants' Motion for Partial Summary Judgment, <u>Hopper et al. v. Jay-Bee Oil & Gas, Inc. et al.</u>, Case No. 5:20-cv-101, at ECF No. 344. In <u>Hopper</u>, the defendants argued that the plaintiffs' leases were in-kind leases, that <u>Tawney</u> does not apply to in-kind leases, and that the duty to market does not apply to in-kind leases. In response, the plaintiffs argued that <u>Wellman</u> and <u>Tawney</u> were not limited to proceeds leases, that the duty to market extends beyond proceeds leases and applies to their leases, and that the leases at issue were, in fact, proceeds

leases.

In Judge Bailey's opinion, he cites only decisions from the Northern District of West Virginia, including this Court's decision in Cather v. EQT Production Co., No. 1:17-CV-208, 2019 WL 3806629 (N.D.W. Va. Aug. 13, 2019), stating that multiple courts have previously found that Wellman and Tawney are not limited to proceeds leases.  Since Judge Bailey's decision in Hopper, however, this Court now has the benefit of the Fourth Circuit's decision in Corder v. Antero Resources Corporation, 57 F.4th 384 (4th Cir. 2023).  Although primarily focused on other issues, the Corder court indicated its agreement with Judge Bailey on the scope of the application of Tawney, Wellman, and Kellam.  Specifically, Corder advises that "the Kellam court never suggested that the decision applies only to leases that calculate leases based on 'proceeds.'"  Id. at 395; see also id. at 395 n.8 ("Nothing in that observation forecloses the possibility that the court would apply the Tawney requirements to more than just 'proceeds' leases (which Wellman itself did not foreclose).").

Thus, this Court cannot conclude that Plaintiff's Complaint fails to plausibly state a claim to relief under Rule 12(b)(6). With respect to Count Two, the motion to dismiss is **DENIED**.

### V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [ECF NO. 12]**

**DENIES IN PART** the motion to dismiss [ECF No. 12].  It is so **ORDERED**.

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: March 7, 2023

*[signature]*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA