IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FRANCIS KAESS,

      Plaintiff,

    v.                                         CIVIL NO. 1:22-CV-51
                                                     (KLEEH)

JAY-BEE OIL & GAS, INC.,
JAY-BEE PRODUCTION COMPANY, and
BB LAND, LLC,

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

Pending before the Court is a motion for summary judgment filed by Defendant BB Land, LLC ("BB Land"). For the reasons discussed herein, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

I.    <u>FACTUAL BACKGROUND</u>

Plaintiff owns certain mineral interests for approximately 103.5 acres in Pleasants County, West Virginia (the "Subject Property") [ECF Nos. 1 at ¶ 18; 30-2 at 2]. His interest is subject to an oil and gas lease dated January 6, 1979 ("the Base Lease"), to which BB Land is the successor-in-interest [ECF No. 30-1]. The Base Lease grants BB Land the right to drill and explore for and extract oil and gas "to the depth of 5000 feet or to the Oriskany Sand," also referred to as the Marcellus Shale formation. Id. at 1. The Base Lease contains a provision for the

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

payment of royalties which states:

> In consideration of the premises the said Lessee covenants and agrees as follows:
>
> 1.  To deliver to the credit of Lessors free of cost in the pipe lines to which he may connect his wells, the equal one-eighth (1/8) part of all oil produced and sold from the leased premises.
>
> 2.  To deliver to the credit of Lessors free of cost in the pipe line to which he may connect his wells, the equal one-eighth (1/8) part of all gas produced and marketed from the leased premises, and the Lessors shall have the right to free gas from any such well or wells for hearing and lighting any building on or off the property, making their own connections therefor at their own risk and expense.

Id. at 2.

On May 19, 2016, Plaintiff and BB Land modified the Base Lease by entering into a Pooling Modification Agreement which added "certain voluntary pooling and unitization terms and conditions" [ECF No. 30-3 at 1]. Specially, the Pooling Modification Agreement added the following provision to the Base Lease:

> POOLING AND UNITIZATION: Lesee, at its option is hereby given the right to pool or combine the acreage covered by this Lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, when in the Lessee's judgment it is necessary to advisable to do so in order to property develop and operate said premises in compliance with any lawful spacing rules which may be prescribed for the field in which this lease is situated by an duly authorized authority, or when to do so would, in the judgment of the Lessee, promote the conservation of the oil and gas in and under and that may be produced from said premises Lessee shall execute in writing an instrument identifying and describing the pooled acreage.  The entire acreage so pooled in a tract

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

or unit shall be treated, for all purposes except the payment of royalties on production from the pooled unit, as if it were included in this lease.  If production is found on the pooled acreage, it shall be treated as if production is had from this lease, whether the well or wells be located on the premises covered by this lease or not.  In lieu of royalties elsewhere herein specified, Lessor shall receive on production from a unit so pooled only such portion of the royalty stipulated herein as the amount of his/her acreage placed in the unit or his/her royalty interest therein on an acreage basis bears to the total acreage so pooled in the particular unit involved.

Id.

Around March 2018, BB Land began reporting production of oil and gas from the Subject Property which is included in the P2S unit.  The Subject Property contributes 64.093 acres of the unit's 624.5024 acres.

Plaintiff alleges that BB Land has placed his share of production royalties in suspense and has improperly deduced post-production costs from his share.  BB Land alleges that, because Plaintiff has never taken a share of production "in kind," as the Base Lease contemplates, it has taken his share of production to market along with its share of production and, thus, is permitted to deduct post-production costs from Plaintiff's royalty payments.

## II.  PROCEDURAL HISTORY

Based on these facts, Plaintiff initiated this lawsuit against BB Land, Jay-Bee Oil & Gas, Inc., and Jay-Bee Production Company asserting three causes of action: (1) Payment

KAESS V. JAY-BEE OIL & GAS ET AL.                                    1:22-CV-51

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

Misallocation (against all Defendants); (2) Improper Deductions – Marcellus (unclear against whom – cites only "Defendant"); and Excessive Deductions – Utica (unclear against whom – cites only "Defendant") [ECF No. 1 at 6-10].

On March 7, 2023, the Court granted in part and denied in part a motion to dismiss filed by Defendants [ECF No. 26]. The Court found that Count Three and part of Count One (related to a February 15 Lease) were subject to an arbitration agreement, and the Court stayed those counts pending their arbitration. The Court also dismissed all non-arbitration claims against Jay-Bee Oil & Gas, Inc. and Jay-Bee Production Company. As such, for purposes of deciding this motion, only BB Land remains as a defendant, and only Count Two and the rest of Count One remain for disposition.

### III. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

KAESS V. JAY-BEE OIL & GAS ET AL.                                1:22-CV-51

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## IV. DISCUSSION

### A. Plaintiff's Request for Extension

In BB Land's motion, it states that Plaintiff did not designate any experts by his March 10, 2023, deadline. Plaintiff apparently attempted to serve his expert report on May 2, 2023, which BB Land argues is untimely. BB Land also argues that Plaintiff failed to respond to BB Land's Request for Admission, which are now deemed admitted.

In response, Plaintiff states that the parties had different interpretations of the Court's order on the motion to dismiss. In its order, the Court wrote, "The Court STAYS resolution of Count Three and the portion of Count One relating to the February 15 Lease. The parties are DIRECTED to submit a filing with the Court when arbitration of these claims is complete." Counsel for Plaintiff apparently interpreted this to mean that the entire case was stayed pending completion of arbitration. For this reason, Plaintiff did not response to BB Land's discovery requests and did not furnish its expert witness disclosure on time. Plaintiff also

KAESS V. JAY-BEE OIL & GAS ET AL.                                1:22-CV-51

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

did not serve his own discovery requests during this time or communicate with BB Land about the mediation deadline.

Plaintiff writes that on May 1, 2023, BB Land communicated with Plaintiff, asking why no discovery responses had been furnished.  It was at this moment that Plaintiff learned of the differing interpretations of the Court's order.  Plaintiff then provided BB Land with an expert witness disclosure on May 2, 2023.  Plaintiff now writes that it "seek[s] guidance on what the Court intended with respect to the language from its Order," and, if the Court's intent aligns with Defendant's, moves the Court to grant Plaintiff an extension to provide BB Land expert disclosures and to provide extension for Plaintiff to answer BB Land's first set of discovery requests.  Plaintiff also requests additional time to ascertain whether BB Land provided Plaintiff incorrect information during discovery and need to supplement.

Based on the record before it, the Court finds no good cause to issue the requested extension.  The Court's order did not mention a stay of Count Two or the remainder of Count One.  Further, the Court specifically cited precedent indicating that some claims can go to arbitration while other proceed in normal course.  See Cabot Oil & Gas Corp. v. Beaver Coal Co., No. 16-0904, No. 15-0905, 2017 WL 5192490, at *8 (W. Va. Nov. 9, 2017) ("While it may seem counterintuitive to split claims for resolution, . . . the

KAESS V. JAY-BEE OIL & GAS ET AL.                              1:22-CV-51

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

Federal Arbitration Act, 9 U.S.C. § 2, requires that if a lawsuit presents multiple claims, some subject to an arbitration agreement and some not, the former claims must be sent to arbitration — even if this will lead to piecemeal litigation."). As such, Plaintiff's requests for extensions regarding its discovery responses and expert disclosures are denied. Defendant's requests for admissions are hereby deemed admitted.

**B.    Remainder of Count One**

To date, BB Land has calculated Plaintiff's royalties based on the acreage he contributes to the P2S Unit. In Count One, he asserts that this is in error and his royalties should be "based upon production from the boundaries of the P2S6 Well itself" [ECF No. 1 at ¶ 41].

BB Land moves for summary judgment on this claim, asserting that the Pooling Modification Agreement unambiguously permits BB Land to calculate Plaintiff's royalties "based on a fraction, the numerator being 'the amount of his/her acreage placed in the unit,' and the denominator being 'the total acreage so pooled in the particular unit involved'" [ECF No. 30 at 6]. Thus, because "[t]he P2SU unit is comprised of 624.5024 acres, of which Plaintiff has contributed 64.093 acres" he is entitled to a royalty consisting of "0.125 [one-eighth] multiplied by (64.093 divided by 624.5024)." Id. at 7.

KAESS V. JAY-BEE OIL & GAS ET AL.                                  1:22-CV-51

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

In response, Plaintiff argues that the Pooling Modification Agreement is ambiguous because it does not define the terms "pool" and "unit."  To resolve this ambiguity, Plaintiff asks the Court to apply West Virginia Code § 22C-9-2(a), defining these terms as used in the state's oil and gas conservation statute.[1]  Plaintiff also asks the Court to incorporate § 22C-9-2(a)'s definitions for "correlative rights" and "just and equitable share of production" into the lease.  Section 22C-9-2(a)(2) defines "[c]orrelative rights" as "the reasonable opportunity of each person entitled thereto to recover and receive without waste the oil and gas in and under his or her tract or tracts, or the equivalent thereof[.]" Section § 22C-9-2(a)(10) defines "[j]ust and equitable share of production" as "to each person, an amount of oil or gas or both substantially equal to the amount of recoverable oil and gas in

---

[1]  Section 22C-9-2(a)(5) defines "unit" or "drilling unit" as "the acreage on which one or more wells may be drilled."  And, pursuant to § 22C-9-2(a)(15):

> "Pool" means an underground accumulation of petroleum or gas in a single and separate reservoir (ordinarily a porous sandstone or limestone). It is characterized by a single natural-pressure system so that production of petroleum or gas from one part of the pool affects the reservoir pressure throughout its extent. A pool is bounded by geologic barriers in all directions, such as geologic structural conditions, impermeable strata, and water in the formations, so that it is effectively separated from any other pools that may be presented in the same district or on the same geologic structure[.]

KAESS V. JAY-BEE OIL & GAS ET AL.                                    1:22-CV-51

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

that part of a pool, unit, or unconventional reservoir in the person's tract or tracts within a unit." According to Plaintiff, § 22C-9-2(a) requires BB Land to pay him royalties based on the amount of oil and gas actually recovered from the Subject Property.

Under West Virginia law, "[a]n oil and gas lease is both a conveyance and a contract." Syl. Pt. 2, Ascent Res. Marcellus, LLC v. Huffman, 851 S.E.2d 782 (W. Va. 2020). Thus, contract law principles also apply to oil and gas leases. Energy Dev. Corp. v. Moss, 591 S.E. 2d 135, 143 (W. Va. 2003).[2] "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 3, Est. of Tawney v. Columbia Nat. Res., L.L.C., 633 S.E. 2d 22 (W. Va. 2006); Syl. Pt. 1, Contiga Dev. Co. v. United Fuel Gas Co., 128 S.E.2d 626 (W. Va. 1962). Where contractual language is ambiguous, however, it must be construed before it can be applied. Haynes v. Daimler Chrysler Corp., 720 S.E.2d 564, 569 (W. Va. 2011). Whether a contract is ambiguous is a question of law determined by the court. Syl. Pt. 1, Berkeley County Pub. Serv. Dist. v. Vitro Corp. of Am., 162 S.E.2d 189 (W.

---

[2] Despite their proliferation and the sometimes-significant damages allegations, actions and claims such as those asserted here are, largely, breach of contract cases.

KAESS V. JAY-BEE OIL & GAS ET AL.                                    1:22-CV-51

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

Va. 1968).    "A contract is ambiguous when it is reasonably susceptible to more than one meaning in light of the surrounding circumstances and after applying the established rules of construction." Williams v. Precision Coil, Inc., 459 S.E.2d 329, 342 n.23 (W. Va. 1995).

"The overriding endeavor in the judicial construction of a lease agreement is to ascertain and give effect to the mutual intent of the signatory parties." Bruce McDonald Holding Co. v. Addington, Inc., 825 S.E.2d 779, 785 (W. Va. 2019).  In doing so, courts rely on several canons of construction.  First, "contracts containing unambiguous language must be construed according to their plain and natural meaning."  Fraternal Ord. of Police, Lodge No. 69 v. City of Fairmont, 196 W. Va. 97, 101, 468 S.E.2d 712, 716 (1996) (citing Payne v. Weston, 466 S.E.2d 161, 166 (W. Va. 1985)).  As with other contracts, oil and gas leases are "not to be construed in a vacuum, but are to be read in their context." Chesapeake Appalachia, L.L.C. v. Hickman, 781 S.E.2d 198, 213 (W. Va. 2015).  Also, such leases are to be interpreted and construed as of the date of execution, Syl. Pt. 4, Ascent, 851 S.E.2d at 783, and generally are "construed in favor of the lessor, and strictly as against the lessee." Syl. Pt. 5, Energy Dev. Corp., 591 S.E.2d 135.

Here, the Court must determine if the royalty provision in

10

KAESS V. JAY-BEE OIL & GAS ET AL.                                    1:22-CV-51

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

the Pooling Modification Agreement is ambiguous.  For the reasons that follow, the Court concludes it is not.  First, contrary to Plaintiff's assertion that "the very existence of this proceeding" demonstrates that the Pooling Modification Agreement is ambiguous on its face [ECF No. 31 at 6], West Virginia law is clear that "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous."  Syl. Pt 2, Flanagan v. Stalnaker, 607 S.E.2d 765, 766 (W. Va. 2004).

Second, that the terms "pool" and "unit" are undefined in the Pooling Modification Agreement does not render these terms or the royalty provision ambiguous.  See Blake v. State Farm Mut. Auto. Ins. Co., 224 317, 322, 685 S.E.2d 895, 901 (W. Va. 2009) ("West Virginia law . . . has never required every term in an insurance policy, nor any contract for that matter, to be defined or else be found ambiguous.").

Third, when the Pooling Modification Agreement was executed in 2016, the terms "pool" and "unit" were frequently used and commonly understood in the industry.  See Pooling Clause, Black's Law Dictionary (11th ed. 2019) (Pooling clauses are provisions "found in most oil-and-gas leases granting the lessee the right to combine part or all of the leased acreage with other properties for development or operations.").  Likewise, in 2016 oil and gas leases often included the type of pooled royalty arrangement

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

contemplated by the Pooling Modification Agreement, i.e., payment based on percentage of acreage in a unit.  See e.g., Powers v. Union Drilling, Inc., 461 S.E.2d 844, 846 (W. Va. 1995).

The undefined terms are not reasonably susceptible to two contradictory meanings.  Regardless of whether the Court looks for the meaning of the undefined terms in West Virginia's oil and gas conservation statute as Plaintiff suggests, or in Black's Law Dictionary as BB Land suggests,[3] the parties intent remains clear.  In executing the agreement, Plaintiff permitted BB Land to combine the Subject Property with adjacent tracts and pay royalties based on the percentage of land it contributed to the production unit.  The terms of the Pooling Modification Agreement are not inconsistent or reasonably susceptible to more than one meaning in light of the surrounding circumstances.  Thus, it is unambiguous and will be enforced as written.  Plaintiff is accordingly entitled to recover production royalties based on the amount of the Subject Property included in BB Land's production unit.

Plaintiff has attempted to create ambiguity where there is none by adding terms to the Pooling Modification Agreement that

---

[3] Black's Law Dictionary defines "pooling" as "[t]he bringing together of small tracts of land or fractional mineral interests over a producing reservoir for the purpose of drilling an oil or gas well" and notes that pooling is "usually associated with collecting a large enough tract to meet well-spacing regulations." Pooling, Black's Law Dictionary (11th ed. 2019).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

the parties chose not to incorporate.  In effect, he asks the Court to rewrite the agreement to include the terms "correlative rights" and "just and equitable share of production" in order to alter how his royalty is to be calculated.  If the parties had included these terms in the Pooling Modification Agreement, BB Land might have been required to account for the amount of oil or gas recovered from the portion of the Subject Property included in BB Land's production unit.  Instead, the parties agreed that Plaintiff's royalties would be calculated based on the amount of acreage contributed to the unit as compared to the total acreage of the unit.  Because the Pooling Modification Agreement is unambiguous, summary judgment is warranted on this issue, and BB Land's motion is granted with respect to Count One.

## C.   Joining Parties

BB Land also argues that Plaintiff fails to join all necessary parties to entitle him to the declaratory relief he seeks. According to it, Plaintiff wants a larger share of the production, which necessarily means another royalty owner will receive a smaller share.  No other royalty owners, however, were named in this suit.  In response, Plaintiff argues that non-parties to the contracts at issue here would not have Article III standing.

"The Fourth Circuit has noted that the absence of interested parties in a declaratory judgment action is a 'particularly

KAESS V. JAY-BEE OIL & GAS ET AL.                                    1:22-CV-51

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

salient' consideration determining whether to decline jurisdiction." XL Ins. Am., Inc. . Metanoia, No. 2:21-cv-0478-DCN, 2021 WL 2982899, at *4 (D.S.C. July 15, 2021) (citation omitted). "Compounding the problem, resolving a declaratory judgment claim in the absence of interested parties risks inconsistent, piecemeal adjudication." Id.

Given the Court's finding that the Pooling Modification Agreement permits BB Land to calculate royalties based on the percentage of acreage contributed, neither Plaintiff's share of production nor any adjacent landowners' interest will be impacted by this lawsuit. Accordingly, his claims do not fail because he has not joined all necessary parties.

**D.   Count Two**

With respect to Count Two, BB Land argues that Plaintiff's in-kind oil and gas lease does not prohibit post-production deductions when Plaintiff fails to take his oil and/or gas in kind. It argues that the duty to market does not apply to in-kind leases, and a lessor's obligation under in-kind leases ends at the point where the royalty owner is to take physical possession and title to the oil or gas. It argues that under the in-kind leases, BB Land became Plaintiff's agent and was obligated to sell the oil or gas on behalf of Plaintiff and was entitled to take deductions from royalty payments to Plaintiff. BB Land's position is that

14

KAESS V. JAY-BEE OIL & GAS ET AL.                    1:22-CV-51

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

Tawney does not apply to Plaintiff's in-kind royalty provisions.

In response, Plaintiff argues that the Base Lease is a
proceeds lease.  Plaintiff further argues that Corder controls.
Because the Base Lease does not indicate otherwise, Plaintiff
argues that BB Land is not entitled to take deductions.

At the motion to dismiss stage, this Court addressed the same
argument from Defendant, and there is no new information before
the Court now.  In its order addressing the motion to dismiss,
this Court noted that the Corder court indicated its agreement
with United States District Judge John Preston Bailey on the scope
of the application of Tawney, Wellman, and Kellam.[4]  Specifically,
Corder advises that "the Kellam court never suggested that the
decision applies only to leases that calculate leases based on
'proceeds.'"  Corder v. Antero Res. Corp., 57 F.4th 384, 395 (4th
Cir. 2023).  The Corder court wrote, "Nothing in that observation
forecloses the possibility that the Court would apply the Tawney
requirements to more than just 'proceeds' leases (which Wellman
itself did not foreclose)."  Id. at 396 n.8.

In Corder, three different types of leases were in issue, and

---

[4] Judge Bailey found that Wellman and Tawney apply regardless of
whether the lease at issue is an in-kind or proceeds lease.  See
Order Denying Defendants' Motion for Partial Summary Judgment,
Hopper et al. v. Jay-Bee Oil & Gas, Inc. et al., Case No. 5:20-
cv-101, at ECF No. 344.

KAESS V. JAY-BEE OIL & GAS ET AL.                                    1:22-CV-51

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

the parties disputed whether the leases allowed Antero to deduct certain types of post-production costs.  The court boiled the issues before it down to two questions: (1) whether the leases were subject to Tawney and (2) whether they satisfy Tawney.  The Court concluded that all of the leases were subject to Tawney.  It concluded that the leases that were silent on post-production costs failed to satisfy Tawney and therefore did not permit Antero to deduct post-production costs.  It found that other leases expressly prohibited Antero from deducting any post-production costs.  It further found that the leases including the Market Enhancement Clause did authorize Antero to make deductions, but only after the specific product Antero sells becomes marketable.

Corder is the most applicable binding precedent the Court has at its disposal.  Because Corder specifically found that nothing in West Virginia case law forecloses the possibility that Tawney requirements apply to more than proceeds leases, the Court reads the holding to mean that the Tawney requirements could potentially apply to in-kind leases as well.  This Court continues to find the Hopper court's reasoning sound and persuasive.  Corder only reinforces that belief.  As such, summary judgment on this issue is not warranted, and BB Land's motion is denied with respect to Count Two.

16

KAESS V. JAY-BEE OIL & GAS ET AL.                                    1:22-CV-51

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 30]**

## V.     CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and

**DENIES IN PART** the motion for summary judgment [ECF No. 30].

It is so **ORDERED.**

The Clerk shall transmit copies of this Memorandum Opinion

and Order to counsel of record.

DATED: July 21, 2023

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA