IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FRANCIS KAESS,**

    **Plaintiff,**

  v.                                      **CIVIL NO. 1:22-CV-51**
                                                        **(KLEEH)**

**BB LAND, LLC,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO CERTIFY QUESTION TO THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

Pending is the motion of the defendant, BB Land, LLC ("Defendant"), to certify a legal question to the Supreme Court of Appeals of West Virginia ("WVSCA") [ECF No. 64]. For the reasons that follow, the Court **GRANTS** the Defendant's motion and intends to certify the following questions:

Question 1: Is there an implied duty to market for leases containing an in-kind royalty provision?

Question 2: Do the requirements for the deductions of post-production expenses from <u>Wellman v. Energy Resources, Inc.</u>, 557 S.E.2d 254 (W. Va. 2001) and <u>Estate of Tawney v. Columbia Natural Resources</u>, 633 S.E.2d 22 (W. Va. 2006), apply to leases containing an in-kind royalty provision?

I.   **Background**

A.   **Factual Background**

The Plaintiff owns certain mineral interests for approximately 103.5 acres in Pleasants County, West Virginia (the

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO CERTIFY QUESTION TO THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

"Subject Property") [ECF Nos. 1 at ¶ 18; 30-2 at 2]. His interest is subject to an oil and gas lease dated January 6, 1979 ("the Base Lease"), to which the Defendant is the successor-in-interest [ECF No. 30-1]. The Base Lease grants the Defendant the right to drill and explore for and extract oil and gas "to the depth of 5000 feet or to the Oriskany Sand," also referred to as the Marcellus Shale formation. Id. at 1. The Base Lease contains a provision for the payment of royalties which states:

> In consideration of the premises the said Lessee covenants and agrees as follows:
>
> 1. To deliver to the credit of Lessors free of cost in the pipe lines to which he may connect his wells, the equal one-eighth (1/8) part of all oil produced and sold from the leased premises.
>
> 2. To deliver to the credit of Lessors free of cost in the pipe line to which he may connect his wells, the equal one-eighth (1/8) part of all gas produced and marketed from the leased premises, and the Lessors shall have the right to free gas from any such well or wells for hearing and lighting any building on or off the property, making their own connections therefor at their own risk and expense.

Id. at 2.

On May 19, 2016, the parties modified the Base Lease by entering into a Pooling Modification Agreement which added "certain voluntary pooling and unitization terms and conditions" [ECF No. 30-3 at 1]. Specially, the Pooling Modification Agreement added the following provision to the Base Lease:

> POOLING AND UNITIZATION: Lesee, at its option is hereby given the right to pool or combine the acreage covered by this Lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, when in the Lessee's judgment it is necessary to advisable to do so in order to property develop and operate said premises in compliance with any lawful spacing rules which may be prescribed for the field in which this lease is situated by an duly authorized authority, or when to do so would, in the judgment of the Lessee, promote the conservation of the oil and gas in and under and that may be produced from said premises Lessee shall execute in writing an instrument identifying and describing the pooled acreage.  The entire acreage so pooled in a tract or unit shall be treated, for all purposes except the payment of royalties on production from the pooled unit, as if it were included in this lease.  If production is found on the pooled acreage, it shall be treated as if production is had from this lease, whether the well or wells be located on the premises covered by this lease or not.  In lieu of royalties elsewhere herein specified, Lessor shall receive on production from a unit so pooled only such portion of the royalty stipulated herein as the amount of his/her acreage placed in the unit or his/her royalty interest therein on an acreage basis bears to the total acreage so pooled in the particular unit involved.

Id.

Around March 2018, the Defendant began reporting production of oil and gas from the Subject Property which is included in the P2S unit.  The Subject Property contributes 64.093 acres of the unit's 624.5024 total acres.  The Plaintiff did not take his share of production in-kind.  The Defendant sold the Plaintiff's share on the market.  It paid him a royalty calculated from the

percentage of land he contributed to the P2S unit's acreage and deducted certain post-production costs.

**B.   Procedural History**

Based on these facts, the Plaintiff initiated this lawsuit against BB Land, Jay-Bee Oil & Gas, Inc., and Jay-Bee Production Company (collectively, "Defendants"), asserting three causes of action: (1) Payment Misallocation; (2) Improper Deductions – Marcellus; and (3) Excessive Deductions – Utica [ECF No. 1 at 6-10].  On March 7, 2023, the Court granted in part and denied in part a motion to dismiss filed by the Defendants [ECF No. 26].  The Court found that Count Three and part of Count One (related to a February 15 Lease) were subject to an arbitration agreement, and the Court stayed those counts pending their arbitration.  The Court also dismissed all non-arbitration claims against Jay-Bee Oil & Gas, Inc. and Jay-Bee Production Company.

As such, only BB Land remained as a defendant, and only Count Two and a portion of Count One remained for disposition.  At the conclusion of discovery, the Defendant filed a motion for summary judgment [ECF No. 30].  On July 21, 2023, the Court granted in part and denied in part its motion [ECF No. 59].

As to Count One, the Plaintiff asserted that the Defendant improperly calculated his royalties based on the acreage he

contributed to the P2S Unit rather than actual "production from the boundaries of the P2S6 Well itself" [ECF No. 1 at ¶¶ 30-43]. The Court granted the Defendant summary judgment on this issue, finding that the Pooling Modification Agreement unambiguously permitted it to calculate the Plaintiff's royalty based on the amount of acreage he contributed to the production unit [ECF No. 59 at 7-14].

As to Count Two, the Plaintiff alleged that the Defendant breached the lease by improperly deducting post-production costs from his share of production royalties. The Defendant contended it is permitted to deduct such costs from the Plaintiff's royalty because he did not take his share of production "in-kind" as contemplated by the Base Lease and so the Defendant was required to take his share of production to market along with its own share of production to avoid waste. The Court denied the Defendant's request for summary judgment on Count Two, finding that the holdings of Wellman and Tawney apply in this case regardless of whether the lease at issue is an in-kind or proceeds lease.

**C. Motion to Certify**

At the final pretrial conference, the Court granted the Defendant's request for leave to file a motion to certify a

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO CERTIFY QUESTION TO THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

question of law to the WVSCA [ECF No. 61]. In its pending motion, [ECF No. 64], the Defendant asks the Court to certify one question:

> Do the requirements for the deductions of post-production expenses from Wellman v. Energy Resources, Inc., 557 S.E.2d 254 (W. Va. 2001) and Estate of Tawney v. Columbia Natural Resources, 633 S.E.2d 22 (W. Va. 2006), apply equally to leases containing an in-kind royalty provision where the lessor is entitled to a share of the production as opposed to the proceeds from a sale to a third party?

According to the Defendant, the WVSCA has not yet addressed whether the implied duty to market, and thus the Wellman and Tawney requirements, applies to in-kind leases and the WVSCA's answer to this question will dispose of the issues in this case. The Defendant acknowledges that the Fourth Circuit Court of Appeals predicted in Corder v. Antero Res. Corp., 57 F.4th 384, 396 (4th Cir. 2023), that the WVSCA would extend the Wellman and Tawney requirements beyond proceeds leases to market value leases. But it asserts that Corder does not govern this cause because it does not address in-kind leases which are distinct from other types of leases under West Virginia law. The Defendant suggests the WVSCA should answer its proposed question in the negative: "[b]ecause an in-kind lease contemplates physical delivery of the product to the royalty holder (for the holder to market as it wishes), the lessee has not assumed an implied duty to market the gas at its own expense" [ECF No. 64 at 3].

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO CERTIFY QUESTION TO THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

The Plaintiff opposes certification [ECF No. 68]. He does not dispute that the answer to the question posed by the Defendant is determinative of his breach of contract claim. Instead, he contends that the WVSCA "has previously and definitely determined" that Wellman and Tawney requirements apply to all oil and gas leases, including in-kind leases.

## II.  Relevant Law

West Virginia has enacted the Uniform Certification of Questions of Law Act, ("UCQLA"), W. Va. Code § 51-1A-1, et seq., which provides:

> The Supreme Court of Appeals of West Virginia may answer a question of law certified to it by any court of the United States ... if the answer may be determinative of an issue in a pending case in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state.

W. Va. Code § 51-1A-3. The Supreme Court of Appeals has recognized that the purpose of this statute is "to provide foreign courts with the benefit of [its] determination of West Virginia law" and "to resolve ambiguities or unanswered questions" in the same. Abrams v. W. Va. Racing Comm'n, 263 S.E.2d 103, 106 (W. Va. 1980) (internal quotations omitted); see also Morningstar v. Black and Decker Mtg. Co., 253 S.E.2d 666, 669 (W. Va. 1979). The provisions of the UCQLA are discretionary for both the certifying court and the Supreme Court of Appeals. Abrams, 263 S.E.2d at 105; see also

Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974) ("[Certification's] use in a given case rests in the sound discretion of the federal court.").

### III. Discussion

Certification of the question proposed by the Defendant is appropriate because its resolution will determine the viability of Count Two, in which the Plaintiff alleges the Defendant took improper deductions from his royalties, and there is no controlling precedent under West Virginia law.

**A.   Issue Determinative**

The first prong of the UCQLA requires that a certified question be issue determinative. W. Va. Code § 51-1A-3. The certified question must "be pertinent and inevitable in the disposition of the case below." Hairston v. Gen. Pipeline Constr., Inc., 704 S.E.2d 663, 673 n.5 (W. Va. 2010). The Supreme Court of Appeals "will not consider certified questions not necessary to the decision of a case." Zelenka v. City of Weirton, 539 S.E.2d 750, 752 (W. Va. 2000) (citing Shell v. Metropolitan Life Ins. Co., 380 S.E.2d 183 (W. Va. 1989). To that end, "certification requires 'a sufficiently precise and undisputed factual record on which the legal issues can be determined ... [and that] such legal issues ... substantially control the case.'" Zelenka, 539 S.E.2d

at 752 (alteration in original) (quoting Bass v. Coltelli, 453 S.E.2d 350, 356 (W. Va. 1994)).

Because the answers to the questions to be certified will determine whether the Defendant was permitted to deduct post-production costs from the Plaintiff's royalties, it will determine the viability of Count Two. Hairston, 704 S.E.2d at 673 n.5. The factual record is sufficiently developed for certification. The Plaintiff acknowledges that the disputed lease entitles him to receive his royalty in-kind. The Defendant does not dispute that it has marketed the Plaintiff's share of gas and has taken certain post-production deductions from the Plaintiff's royalty. Thus, no material facts are in dispute. The questions to be certified are purely legal questions involving West Virginia oil and gas law.

**B. No Controlling Appellate Authority**

The second prong of the UCQLA is satisfied if it "appears to the certifying court there is no controlling precedent in the decisions of the [S]upreme [C]ourt of [West Virginia]." Morningstar, 253 S.E.2d 666, 669 (W. Va. 1979). Here, there appears to be no controlling authority addressing whether the implied duty to market or the requirements set forth in Wellman and Tawney apply to in-kind leases.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO CERTIFY QUESTION TO THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

More than twenty years ago, the WVSCA issued its decision in Wellman, establishing West Virginia as a "marketable product rule" state. 577 S.E.2d at 265. As such, under West Virginia law, an oil and gas lessee has an implied duty to market the product produced and "bears all post-production costs incurred until the product is first rendered marketable, unless otherwise indicated in the subject lease." SWN Prod. Co., LLC v. Kellam, 875 S.E.2d 216, 221 (2022) (citing Wellman, 557 S.E.2d at 256, syl. pts. 4 and 5). For a lessee to deduct any post-production costs from a lessor's royalty payments, the lease must expressly allocate such costs to the lessor and the lessee must prove that the costs were actually incurred and reasonable. Wellman, 577 S.E.2d at 265.

Thereafter, the WVSCA reiterated the "default rule is that lessees bear the brunt of post-production costs absent lease language shifting that cost—or a portion thereof—to the lessor" in Tawney. Kellam, 875 2d at 223 (citing Tawney, 633 S.E.2d at 24, syl. pt. 10. Tawney also set forth three basic requirements to rebut the presumption that the lessee bears all post-production costs: the lease must (1) "expressly provide that the lessor shall bear some part of the costs incurred between the wellhead and the point of sale;" (2) "identify with particularity the specific deductions that the lessee intends to take from the lessor's royalty;" and (3) "indicate the method of calculating the amount

to be deducted from the royalty for such post-production costs." Tawney, 633 S.E.2d at 30.

The WVSCA recently reaffirmed these principles in SWN Prod. Co., LLC v. Kellam, 875 S.E.2d 216 (2022). There, it held that Tawney remained good law and that whether a particular lease satisfies the Wellman and Tawney requirements "is a question of contract interpretation guided by principles of contract law." Id. at 227.

In the decades since West Virginia became a marketable product state, courts in this district have had ample opportunity to interpret and apply the WVSCA's oil and gas precedent. Many of these decisions have addressed whether the holdings of Wellman and Tawney, involving leases with proceeds-based royalty provisions, extend to leases with another type of royalty provision. In each of these cases the Court concluded that the Wellman and Tawney requirements extend to leases containing market value-based royalty provisions. See e.g., Goodno v. Antero Resources Corp., 2020 WL 13094067 (N.D.W. Va. July 21, 2020); Cather v. EQT Production Co., 2019 WL 3806629 (N.D.W. Va. August 13, 2019); Corder v. Antero Resources Corp., 322 F. Supp. 3d 710, 719 (N.D.W. Va. 2018); Romeo v. Antero Resources Corp., 2018 WL 4224452, *4 (N.D.W. Va. Sept. 5, 2018).

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO CERTIFY QUESTION TO THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

The Court of Appeals of the Fourth Circuit reached the same conclusion in Corder v. Antero Res. Corp., 57 F.4th 384, 393-94 (4th Cir. 2023). Addressing the royalty provision in a proceeds lease, the court held that the principles established in Wellman and Tawney were not limited to proceeds leases.

Thus, applying West Virginia law, courts have consistently held that a lessor may be required to bear a portion of the post-production costs incurred in rendering the oil and gas marketable when the lease contains a market value or a proceeds-based royalty provision. The instant case presents a key factual distinction, however. Here, the Court must determine whether the lessor may be required to bear a portion of the post-production costs incurred in rendering the oil and gas marketable when they have opted to receive a share of the oil or gas itself, rather than a share of the lessee's profit from production. Neither the WVSCA or courts in this district have addressed whether in-kind leases are premised upon the same marketable product rule or whether the Wellman and Tawney requirements extend to such leases.

Therefore, the Court concludes that there is no controlling decision, constitutional provision, or statute on either question to be certified and the second prong of the UCQLA is satisfied. Morningstar, 253 S.E.2d at 669. Given that the substantive law governing this case is unclear, certification of these questions

will further the purpose of the UCQLA by providing this Court with the benefit of West Virginia's highest court's definitive resolution of the questions presented. Abrams, 263 S.E.2d at 106.

### IV. Conclusion

For the reasons discussed, the Court **GRANTS** the Defendant's motion to certify a legal question to the Supreme Court of Appeals [ECF. No. 64] based on:

1. The Defendant's argument that, where an in-kind lease is involved, an oil and gas lessee is permitted to take post-production expenses without satisfying the requirements of Wellman and Tawney;

2. The Plaintiff's counterargument that the implied duty to market applies to all oil and gas leases under West Virginia law;

3. The recognition by the Supreme Court of the United States and courts within this District that the state certification procedure is an efficient and useful mechanism for resolving unanswered questions of state law; and

4. Plaintiff's lack of a persuasive argument against certification.

It is so **ORDERED**.

13

Case 1:22-cv-00051-TSK   Document 73   Filed 08/25/23   Page 14 of 14   PageID #: 748

KAESS V. BB LAND, LLC                                              1:22CV51

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO CERTIFY
QUESTION TO THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

The Clerk **SHALL** transmit copies of this Memorandum Opinion to counsel of record.

DATED: August 25, 2023

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA